IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| BRANDON PIPER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No.: 2:15-cv-154 |
| ) | |
| ERIC D. WILSON, Warden ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* litigant Brandon Piper's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, and Respondent's Motion to Dismiss, or alternatively, Motion for Summary Judgment ("Motion to Dismiss"). ECF No. 4. The petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Eastern District of Virginia Local Civil Rule 72. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the reasons stated below, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** and that the Petition for Writ of Habeas Corpus be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2009, federal agents arrested Petitioner for, *inter alia*, Distribution of a Controlled Substance and Aiding and Abetting of a Controlled Substance in violation of 21 U.S.C. § 841(a). ECF No. 1. The United States District Court for the Middle District of

Pennsylvania released Petitioner on an unsecured bond and ordered him to home confinement on August 20, 2009. *See* Order Setting Conditions of Release at 1-2, ECF No. 5-2. Petitioner remained on bond until November 23, 2011. Petitioner pled guilty to three charges, and the court sentenced him to sixty-six (66) months of imprisonment on June 21, 2012. *See* Judgment at 6, ECF No. 5-3. At the sentencing hearing, the court informed Petitioner that it would not recommend sentencing credits for the 823 days he served on home confinement because the Bureau of Prisons ("BOP") calculates credits toward sentencing and not the court. *See* Sent'g Tr. 31:9-14, Ex. 2, ECF No. 1.

On November 20, 2013, Petitioner began the administrative process to request a sentencing credit for his time served on home confinement by filing a complaint with the BOP. ECF No. 5-1 at 4. On December 11, 2013, the BOP rejected Petitioner's complaint for failure to attempt informal resolution with the BOP prior to filing the complaint. *Id.* at 8. After Petitioner re-filed the complaint, Respondent replied on January 3, 2014, indicating that it required further investigation. *Id.* at 6. On January 14, 2014, Petitioner filed an appeal to the BOP's Mid-Atlantic Office, which subsequently denied the appeal on February 6, 2014. *Id.* at 12-13. On March 6, 2014, Petitioner appealed that decision to the BOP's General Counsel Office, which also denied the appeal on April 10, 2014. *Id.* at 14-16.

On January 16, 2015, Petitioner filed a motion with the court that sentenced him to request credit against his sentence for time served on home confinement. *See* Mot. To Request Jail Credits 1, ECF No. 5-1. The court denied the motion stating that it did not have jurisdiction over the sentencing credit as well as asserted that Petitioner was not "detained" during his time on home confinement with electronic monitoring. ECF No. 5-5. Petitioner responded by filing

the instant Petition for Writ of Habeas Corpus on April 10, 2015 claiming that the BOP failed to properly credit him for the 823 days he served on home confinement. ECF No. 1.

## II. ANALYSIS

### A. Section 2241 and Exhaustion of Remedies

Section 2241 ("§ 2241") authorizes the federal court to issue a writ of habeas corpus to state and federal prisoners who are "in custody in violation of the Constitution of laws or treaties of the United States." More specifically, a § 2241 habeas petition "challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *see also In re Vial*, 115 F.3d 1192, 1194 n. 5 (4th Cir. 1997) ("Attacks on the execution of a sentence are properly raised in a § 2241 petition."). A prisoner must file a § 2241 habeas petition in the federal district where he is in custody. *Rumsfield v. Padilla*, 542 U.S. 426, 434 (2006); *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989).

The federal district court may review a § 2241 habeas petition only after a petitioner exhausts his administrative remedies. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *Pelissero v. Thompson*, 170 F.3d 442, 445 (4th Cir. 1999). "Failure to exhaust may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished) (citing *Carmona v. United State Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, "exhaustion protects administrative authority [by] giv[ing] an agency an opportunity to correct its own mistakes with respect to the programs it

administers before it is [hauled] into federal court, and it discourages disregard of [the agency's procedures]." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (internal quotations omitted). Second, exhaustion helps promote efficiency by allowing the resolution of claims in a quicker, more economical fashion before filing in federal court. *Id.*

Accordingly, the BOP established the Administrative Remedy Program as set forth in 28 C.F.R. §§ 542.10-19, which outlines the procedure through which an inmate may seek formal review of an issue or complaint relating to his confinement. Generally, a prisoner must first attempt to resolve the matter through informal discussion with BOP staff. 28 C.F.R. § 542.13(a). If this is unsuccessful, the inmate may then submit "a formal written Administrative Remedy Request, on the appropriate form" at his place of incarceration. *Id.* § 542.14. "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15. Thereafter, an inmate may appeal "to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* This constitutes "the final administrative appeal." *Id.*

Here, Petitioner satisfied the aforementioned requirements prior to filing the § 2241 habeas petition. First, Petitioner, a federal prisoner in Petersburg, Virginia, properly filed the § 2241 habeas petition in the United States District Court for the Eastern District of Virginia. Second, Petitioner sufficiently met the requirements for the exhaustion of administrative remedies. Petitioner filed a formal complaint on November 20, 2013, and the BOP denied the request for sentencing credits due to Petitioner's failure to seek informal resolution prior to filing the complaint. Petitioner re-filed the complaint, and the Warden responded on January 3, 2014, by stating, "your complaint warrants further investigation . . . [and] your request for remedy at

this level is denied." On Jan. 14, 2014, Petitioner appealed to the BOP's Regional Mid-Atlantic Office, which denied the appeal on February 6, 2014. Petitioner subsequently appealed this decision within 30 calendar days by filing with the BOP's General Counsel Office on March 6, 2014. That office denied his appeal on April 10, 2014, constituting the exhaustion of the BOP's Administrative Remedies.

## B. The BOP's Sentencing Calculation

Petitioner argues that the BOP failed to properly credit him for the 823 days he served on pre-trial home confinement with electronic monitoring from August 20, 2009 to November 23, 2011. Respondent argues that Petitioner fails to state a claim upon which relief may be granted because Petitioner's time on home confinement did not constitute "official detention" under 18 U.S.C. § 3585.

As an initial matter, the Court notes that the Attorney General administers federal sentences through the BOP. *Unites States v. Wilson*, 503 U.S. 329, 335. The BOP conducts such administration according to 18 U.S.C. § 3585, which states:

> *(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the **official detention** facility at which the sentence is to be served.*
>
> *(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in **official detention** prior to the date the sentence commences--*
> *(1) as a result of the offense for which the sentence was imposed; or*
> *(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;*
>
> *that has not been credited against another sentence.*

5

Here, Petitioner's sentence commenced on June 22, 2012, the date upon which he voluntarily surrendered for service of the federal sentence. However, Petitioner challenges the BOP's computation of credit for time served and asserts that his time on home confinement constitutes "official detention." Petitioner asserts that the statute's plain language gives the term "official detention" a meaning of "authorized confinement, especially a temporary custody prior to disposition of a court."[1] However, the United States Supreme Court takes a contrary view.

In *Reno v. Koray*, the Supreme Court addressed the proper meaning of "official detention." 515 U.S. 50 (1995). The Court asserted that it is a "fundamental principle of statutory construction . . . that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Id.* at 56 (quoting *Deal v. United States*, 508 U.S. 129 (1993)). As a result, the Court viewed the term "official detention" in light of the Bail Reform Act of 1984 that "authorizes federal courts to place presentence restraints on a defendant's liberty." *Id.* Under the Bail Reform Act, "the court may 'release' the defendant subject to a variety of restrictive conditions, including residence in a community treatment center." *Id.* at 57. "If, however, the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court shall order the detention of the person." *Id.* (citing 18 U.S.C. §§ 3142(e) and 3142(i)(2)). Consequently, the Court held that "a defendant suffers detention only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is released." *Id.* (internal quotations omitted). The Court rejected the notion that the restrictiveness of the conditions may constitute detention because "a defendant who is released is not in BOP's custody, and he cannot be summarily reassigned to a

---

[1] Petitioner bases his argument on *Reid v. Angelone*, which explains that interpretation of Congressional statutes must "begin by examining its plain language" and "giv[ing] the relevant terms their common and ordinary meaning." 369 F.3d 636, 367.

different place of confinement unless a judicial officer revokes his release." *Id.* at 63. The Court also asserted that a "detained" defendant is subject to the BOP's control and completely subject to the disciplinary procedures of the BOP, unlike those "released." *Id.*

The Fourth Circuit follows this established precedent when determining "official detention" for purposes of sentence calculation and sentencing credits. For example, in *United States v. Insley*, the Fourth Circuit ruled that "[f]or the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." 927 F.2d 185, 186 (4th Cir. 1991) (quoting *United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989)). More specifically, in *United States v. Gunthrap*, the Fourth Circuit held that "time spent on house arrest with electronic monitoring does not constitute time served in 'official detention' under 18 U.S.C. § 3585." 420 F. App'x 254, 256 (4th Cir. 2011).

Here, Petitioner argues that his time on home confinement with electronic monitoring should be credited against his sentence. However, unlike the BOP, the Court has no authority to grant such credit. Furthermore, established precedent has determined that home confinement does not constitute "official detention." *Koray* clearly establishes that defendants "released" on bail are not considered detained for purposes of calculating sentencing credits. Petitioner's court order granting his pretrial release specifically states, "a violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both." This provision clearly indicates that the court treated Petitioner as a "released" defendant and not as a "detained" defendant. As a result,

Petitioner was not considered in "official detention" from August 20, 2009 until November 23, 2011, thereby precluding him from receiving credit for the 823 days of home confinement.

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and that the § 2241 habeas petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 30, 2015